**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**LUFKIN DIVISION**

| | | |
|---|---|---|
| DENNIS KEITH HINES, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | CASE NO. 9:06CV269 |
| v. | § | |
| | § | JUDGE RON CLARK |
| KENT HENSON, In his official capacity as | § | |
| Sheriff of Angelina County Texas, | § | |
| | § | |
| *Defendant.* | § | |

**ORDER ON DEFENDANTS MOTION FOR SUMMARY JUDGMENT**

Before the court is the Motion for Summary Judgment of Defendant Sheriff Kent

Henson [Doc. # 31].  Plaintiff Dennis Hines brings suit against Defendant under 42 U.S.C. §

1983, alleging violations of the Fourteenth Amendment.

**I. Background**

The following facts are undisputed.  At 9:58 p.m. on December 20, 2004, Texas

Department of Public Safety Trooper Douglas Minshew stopped his patrol car to assist a car

which appeared to have broken down.  After attempting to speak to the driver, Plaintiff Dennis

Hines, and receiving no response, Trooper Minshew called for backup.  Upon further

questioning, Hines appeared disoriented and was unable to respond coherently to officers on the

scene.  Based on the difficulty Hines had speaking and his physical demeanor, Trooper

Minshew placed Hines under arrest for public intoxication and had him transported to the

Angelina County Jail.  En route, Hines answered questions regarding whether he was hurt or

having problems in the negative.

Upon Hines' arrival at the jail, jail employees observed that Hines exhibited the signs of an intoxicated individual, including speech impediments, loss of coordination, and mental confusion.  Hines was placed in a detox cell located directly across from the booking desk, and held there until 9:00 a.m. on December 21, 2004.  At no time did Hines tell any police officer or jail employee that he was ill or needed to go to the hospital.   After his release, Hines went to Memorial Hospital of East Texas, where it was determined   he had a stroke prior to his arrest.

## II. Standard of Review

The party moving for summary judgment under Fed. R. Civ. P. 56 has the initial burden of demonstrating that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S. Ct. 2505, 2514 (1986).  Movant may show that the undisputed material facts affirmatively establish a right to judgment.  Alternatively, movant may establish that the other party has the burden of proof at trial, and has failed to "make a showing sufficient to establish the existence of an element essential to [its] case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2522 (1986).

In order to avoid summary judgment, the  party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86, 106 S. Ct. 1348, 1335  (1986); *Anderson*, 477 U.S. at 257, 106 S. Ct. at 2514.  The nonmoving party  "must do more than simply show that there is some metaphysical doubt as to the material facts."

*Matsushita,* 475 U.S. at 586, 106 S. Ct. at 1356.   Fed. R. Civ.  P. 56 requires that the

nonmoving party set forth specific facts showing that there is a genuine issue for trial.

*Anderson,* 477 U.S. at 256, 106 S. Ct. at 2514.  Only a genuine dispute over a material fact (a

fact which might affect the outcome of the suit under the governing substantive law) will

preclude summary judgment.  *Anderson*,  477 U.S. at 248, 106 S. Ct. at 2510.  The dispute is

genuine if the evidence is such that a  reasonable jury could return a verdict for the nonmoving

party on the issue.  *Id.*  If the factual context renders a claim implausible (for example if the

claim simply makes no economic sense)  nonmovants "must come forward with more

persuasive evidence to support their claim than would otherwise be necessary."  *Matsushita*,

475 U.S. at 587, 106 S. Ct. at 1356.

      Fed. R. Civ. P. 56(c) requires the court to look at the full record, including the

pleadings, depositions, answers to interrogatories, admissions, and affidavits.  But, the court is

not going to "sift through the record in search of evidence to support a party's opposition to

summary judgment."  *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 463 (5th Cir. 1996)(citations

omitted); *see also* Local Rule CV-56(c) and Appendix 1, ¶ 3 of the Order Governing

Proceedings in this case. All reasonable inferences to be drawn from the underlying facts must

be viewed in the light most favorable to the party opposing the motion, and any doubt must be

resolved in its favor.  *Matsushita*, 475 U.S. at 587, 106 S. Ct. at 1356.  However, only

*reasonable* inferences in favor of the nonmoving party can be drawn from the evidence.

*Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 468; 112 S. Ct. 2072, 2083

(1992).

**III. 42 U.S.C. § 1983**

**A. Claim Against Sheriff Kent Henson in his Official Capacity[1]**

I. Standard of Review

The events underlying this suit occurred while Hines was a pretrial detainee. Therefore,

Hines' constitutional rights flow from the due process guarantees of the Fourteenth

Amendment rather than from the Eighth Amendment's prohibition against cruel and unusual

punishment. *See Colson v. Grohman,* 174 F.3d 498, 504 n. 2 (5th Cir. 1999). However, the

Eighth and Fourteenth Amendments impose the same duty on jail and prison officials to

provide for the basic safety and well-being of all inmates. *Hare v. City of Corinth,* 74 F.3d 633,

639, 649 (5th Cir. 1996). Although the state has an important interest in the incarceration of

pretrial detainees and convicted state prisoners,

> when the State by the affirmative exercise of its power so restrains an individual's
> liberty that it renders him unable to care for himself, and at the same time fails to
> provide for his basic human needs-e.g., food, clothing, shelter, medical care, and
> reasonable safety-it transgresses the substantive limits on state action set by the Eighth
> Amendment and the Due Process Clause. *DeShaney v. Winnebago County Dept. of
> Social Servs.,* 489 U.S. 189, 200 (1989).

Accordingly, pretrial detainees and convicted prisoners must establish the same

elements of liability to maintain constitutional claims for injuries they received in prison. *Gibbs*

*v. Grimmette,* 254 F.3d 545, 548 (5th Cir. 2001).  The constitutional challenges under § 1983

by pretrial detainees must first be classified as either a "condition of confinement" or as an

---

[1]      Official capacity suits are merely another way of pleading an action against the entity that
employs the individual or agent sued. *Kentucky v. Graham,* 473 U.S. 159, 165-166, 105 S.Ct.
3099 (1985). In all respects but name, an official capacity suit is to be treated as a suit against the
entity. *Turner v. Houma Municipal Fire and Police Civil Service Bd.,* 229 F.3d 478, 484 (5th Cir.
2000).

"episodic act or omission." *Flores v. County of Hardeman, Tex.,* 124 F.3d 736, 738 (5th Cir

1997). Only the latter is at issue.

Two elements must be proved to satisfy a challenge under § 1983. First, only injuries

that implicate a deprivation of "the minimal civilized measure of life's necessities" are

considered sufficiently serious. *Id.* This is an objective inquiry. For example, if the claim is

based on a failure to prevent harm, the inmate must present facts objectively showing that he

was confined "under conditions posing a substantial risk of serious harm." *Farmer,* 511 U.S. at

834. The second element presents alternative requirements, depending on whether the alleged

injury resulted from a specific act or omission by a prison official, or from a physical condition

of confinement. As to claims based on specific acts or omissions, the detainee must show that

the official possessed a sufficiently culpable state of mind. In particular, the Constitution

prohibits "deliberate indifference to inmate health or safety." *Id.* Unlike the first element

addressing the seriousness of the injury or danger, this element involves a subjective test.

Deliberate indifference requires that the official "knows of and disregards an excessive risk to

inmate health and safety; the official must both be aware of facts from which the inference

could be drawn that a substantial risk of serious harm exists, and he must also draw the

inference." *Id.* at 837. Subjective deliberate indifference cannot be inferred from a prison

official's failure to act reasonably or failure to alleviate a risk that he did not perceive. *Hare,* 74

F.3d at 649.

To succeed in holding a municipal entity liable in an episodic-act-or-omission case, the

plaintiff must also establish that an act or omission resulted from a municipal policy or custom

adopted or maintained with objective deliberate indifference to the detainee's constitutional

rights. *See Olabisiomotosho v. City of Houston,* 185 F.3d 521, 526 (5th Cir. 1999).


II. Deliberate Indifference

Defendant Sheriff Kent Henson  moves for summary judgment dismissing Hines' claim,

contending that he cannot establish deliberate indifference of Plaintiff's constitutional rights on

the part of Angelina County employees.

Hines' allegations regarding lack of  medical treatment present an act or omission

claim. *Hare,* 74 F.3d at 646.  In cases involving medical treatment, the inmate "must show that

the officials refused to treat him, ignored his complaints, intentionally treated him incorrectly,

or engaged in any similar conduct that would clearly evince a wanton disregard for any serious

medical needs." *Domino v. Tex. Dep't of Crim. Justice,* 239 F.3d 752, 756 (5th Cir. 2001).

Unsuccessful treatment, ordinary acts of negligence, and disagreements with the level or type of

treatment do not amount to deliberate indifference. *Estelle v. Gamble,* 429 U.S. 97, 105 (1976).

The undisputed facts in the record disclose the following:

1.  When Trooper Minshew stopped to assist Hines, Hines exhibited signs of
intoxication.  These included slurred speech, glassy eyes, incomplete answers to
officers' questions, and rocking back and forth.

2. Based on Hines' condition, he was arrested for public intoxication and transported to
the Angelina County Jail.  En route, he answered questions such as "Are you having any
problems?" and "Are you hurt?" in the negative.

3. Upon his arrival, jail employees noticed that Hines had the signs and symptoms of
intoxication, namely loss of coordination, mental confusion, and speech impediments.
Hines was placed in a detox cell, which was located directly across from the booking
desk so that jailors can consistently observe and monitor inmates placed in those cells.

4. Jailor Alicia Kerss had, at the time of Hines' incarceration, a Basic level certification
as an Emergency Medical Technician.  The training for this certification consists of

approximately 300 to 400 classroom hours and two practical rotations, which consist of 40 hours each.  Other than a general observation that Hines spoke and acted as if he had taken too much Xanax, Kerss did not observe anything that made her think he was ill or in need of medical treatment.

5. Defendant's Expert, Dr. Anderson, found that Hines' condition of apparent intoxication was an appropriate, if medically inaccurate, assessment by a lay person. Def. Mot. Sum. Judgmt., Ex. H, p. 4 [Doc. # 31].  Plaintiff does not dispute his opinion.

6.  Hines was never offered medical care before his release at 9:00 a.m. on December 21, nor did he ever request any.  After his release, he went to Memorial Hospital of East Texas, where it was determined that he had a stroke prior to his arrest.

7. The Angelina County Jail policies contain a Health Services Plan, based on, and in conformance with, the Texas Commission on Jail Standards' Minimum Jail Standards. The Plan provides for the classification of inmate medical needs as routine or emergency, and also states that where there is any question on the seriousness of an inmate's medical needs, the case will be treated as an emergency.  In the case of a medical emergency, the Plan provides for transportation to a local hospital.

Even drawing all inferences in favor of Plaintiff, the court finds that genuine issues of material fact do not exist as to whether the lack of medical treatment amounted to deliberate indifference.  The undisputed facts in this case clearly indicate that Plaintiff appeared to police officers and jail personnel to be suffering from alcohol and/or drug intoxication, even EMT-trained Jailor Keress.  Although in a superior position by virtue of her extensive training to respond to inmates' medical needs, Jailor Keress did not observe anything about Plaintiff which led her to conclude that he required medical care.  Plaintiff exhibited slurred speech, mental confusion, lack of coordination, and glassy eyes; such symptoms are entirely consistent with intoxication.  Plaintiff never once asked for medical care, even though he had some limited ability to speak and answer questions.  In fact, when asked directly by one officer whether he was hurt or having any problems, Plaintiff answered in the negative.

Based on these facts, Plaintiff has not shown that any Angelina County employee

7

exhibited deliberate indifference toward him.  Plaintiff can point to no evidence that any of the officers or jail employees had any indication that the symptoms he exhibited were due to something other than intoxication.  He cannot show that officials refused to treat him or ignored his complaints, because no such request or complaint was ever made by Plaintiff.  Similarly, Plaintiff has offered no evidence that he was intentionally treated incorrectly or of any other conduct which would clearly show an intentional disregard for his medical needs.   On the contrary, Plaintiff was placed in a detoxification cell located directly across from the booking area, where jail employees could monitor him at all times.  Even an EMT-certified jailor, trained to recognize signs of medical distress, did not observe any symptoms which were inconsistent with intoxication and would indicate that Plaintiff was in need of medical care.

If jail employees were in any way unsure as to the state of Plaintiff's medical needs, the Angelina County Jail's Health Services Plan required that they treat the case as an emergency and transport him to a local hospital.  Rather than deliberate indifference, the actions of jail employees and the policies of the county regarding inmate medical needs demonstrate that there are measures in place to identify and treat inmates' medical needs.  In the event there is any question as to the severity of those needs, the county policy is to err on the side of caution and transport the inmate to a local hospital.

The only possible indication that any officer or jail employee suspected Plaintiff might be a medical risk comes from the form relating to Medical Disability and Suicide Information filled out by Officer Norman during booking.  The questions of whether the inmate was considered a medical risk and whether the arresting officer believed him to be a medical risk were answered in the affirmative; however, the inability of Plaintiff to answer other questions

on the form correctly (where you are, what season it is, how many months are in a year) is, like

his physical symptoms, consistent with intoxication.

Given that Plaintiff's symptoms were clearly indicative of intoxication and he neither

requested medical care nor indicated in his answers to questions regarding his medical state that

he needed such care, it was entirely reasonable for jail personnel to believe Plaintiff was under

the influence of alcohol and/or drugs.  As noted above, consistent with jail procedure, Plaintiff

was placed in a detoxification cell located directly opposite the booking desk, so that he could

be observed by jail employees and presumably assisted if it did become apparent that medical

care was necessary.  Plaintiff has offered no evidence that his medical state should, or even

could, have been apparent to jail personnel.  If Plaintiff had demonstrated to jail personnel that

he had a serious medical need, he would have been transported to a local hospital, pursuant to

Angelina County policy; the Health Services Plan also requires that jail employees err on the

side of caution where the severity of an inmate's needs are in question.  As a result, Plaintiff

cannot show deliberate indifference to his medical condition on the part of any county

employee.

III.  Policy and Custom

Even assuming Plaintiff is able to demonstrate deliberate indifference on the part of a

county employee, he still cannot show that there was a policy or custom of deliberate

indifference to the medical needs of inmates at the county jail.

Municipal policy for purposes of Section 1983 liability may be found in a policy

statement, ordinance, regulation, or decision that is officially adopted and promulgated by the

municipality's lawmaking officers or by an official to whom the lawmakers have delegated

policy-making authority.  *Johnson,* 379 F.3d at 309. Alternatively, municipal policy under

Section 1983 can be a persistent, widespread practice of municipal officials or employees,

which, although not authorized by officially adopted and promulgated policy, is so common and

well settled as to constitute a custom that fairly represents municipal policy. *Id.*

The municipal policy in question must be adopted or administered by a policymaker

"with deliberate indifference as to its known or obvious consequences... A showing of simple or

even heightened negligence will not suffice." *Johnson*, 379 F.3d 293, 309.  Deliberate

indifference "generally requires that a plaintiff demonstrate at least a pattern of similar

violations." *Id.*

There are two municipal policies at issue in this case.  The first  is a statement from the

Operational Plan of the Angelina County Sheriff's Department, Jail Division, which reads in

relevant part as follows:

> If an individual cannot respond accurately to the requested information due to the
> individual's level of intoxication, the individual will be placed in detox until the
> individual's level of intoxication has decreased to the point the individual can provide
> reliable information to complete the classification process.  Persons assigned to detox
> will be assigned to a housing or holding area as soon as they can care for themselves.

The second policy is the aforementioned Health Services Plan, which provides for the

classification of inmate medical needs as routine or emergency, depending on the urgency of

the problem.  Where there is any question as to the seriousness of the inmate's medical needs,

the case is handled as an emergency and the inmate transported to a local hospital.

Here, there is little, if any, evidence that the first policy was adopted or administered

with deliberate indifference.  The policy of Angelina County regarding detoxification cells was

adopted in conformance with the classification plan required by the Texas Commission on Jail

Standards, and was approved by that body.  It addresses the procedure to be followed when

intoxicated individuals are brought into the jail; facially, it does not authorize any denial of

medical care to these individuals, nor does it even purport to govern the situation when an

individual might need such care.

Other than a single affidavit opining that the policy in question is dangerous, Plaintiff

has produced no evidence that any policymaker acted with deliberate indifference.  He has not

pointed to any other incident- similar to his own situation or otherwise- in which following the

policy was problematic.  While Plaintiff is correct that this is not a requirement, the lack of

other incidents makes it that much more difficult for Plaintiff to demonstrate deliberate

indifference on the part of the policymaker as to the policy's known or obvious consequences.

He has adduced no evidence tending to show that the consequences he claims following this

policy had, namely the denial of medical care to a stroke victim, were known or obvious.

Plaintiff's task is made more difficult by the fact that the Jail Standards Commission

specifically contemplates that all county jails classification plans will have a similar

detoxification cell procedure.  This single policy provision, which accords with statute and must

be approved by the Commission before it can be implemented, and which is part of an overall

policy that includes the referenced provision for transporting an inmate to the hospital, is not

evidence of known or obviously harmful consequences that were deliberately ignored.

It is clearly the written policy of Angelina County to provide medical care to inmates

when there is any doubt as to the severity of their condition.  The Health Services Plan requires

the county to err on the side of caution and treat the case as an emergency, requiring

transportation to a local hospital.  The jailor on duty was EMT-certified, a level of training that

requires approximately 300 to 400 classroom hours and two practical rotations, consisting of 40

hours each.  Such an EMT-trained jailor is better trained than most to recognize and classify the

medical needs of inmates, making it very unlikely that any medical emergency is overlooked.

It is extremely difficult, therefore, to imagine any set of circumstances under which the

county's official policies could be considered deliberately indifferent, let alone under the facts

of this case.  Plaintiff does not dispute the existence or content of these policies; rather he

opines that despite the Health Services Plan, despite the location of the detoxification cells, and

despite the presence of an EMT-trained jailor on duty, Angelina County's official policies were

somehow adopted with deliberate indifference to the medical needs of inmates.  He has,

however, produced no evidence that would tend to support this conclusion.  Even construing

the evidence in the light most favorable to Plaintiff, the court finds that no genuine issue of

material fact exists, making a grant of summary judgment appropriate.

IV. Failure to Train

Although Plaintiff never alleged a claim of failure to train, the court will briefly address

the issue.  The Supreme Court has held that failure to train employees will result in municipal

liability where such failure "amounts to deliberate indifference to the rights of persons with

whom the [employee] comes into contact."  *City of Canton v. Harris*, 489 U.S. 378, 388 (1988).

Municipal liability will only attach where the Plaintiff can show a "deliberately indifferent"

training policy that was the "closely related" cause of the constitutional violation.  *Id.* at 391;

*see also Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 453 (5th Cir. 1994).

Plaintiff has not put forth any evidence of a training policy, much less any facts that

would indicate that such training was inadequate.  Although this case is factually similar to

*Canton*, the plaintiff in *Canton* adduced evidence that a municipal regulation gave shift commanders sole discretion to determine whether a detainee needed medical care without providing those commanders with any special training to make such a determination.  *Canton*, 489 U.S. 381, 381-82.

Plaintiff in this case has provided the court with no such evidence.  In stark contrast to the situation  in *Canton*, Angelina County employed at least one EMT-trained jailor, with between 300 and 400 hours of classroom training and two practical rotations of 40 hours each. The municipal policy at issue here, the Health Services Plan, provides for classification of inmate medical needs and requires that when there is any question as to the seriousness of those needs, the case will be treated as an emergency and the inmate transported to a local hospital. The policies of Angelina County regarding inmate medical care, therefore, require a jail employee who is at all unsure about an inmate's medical state to err on the side of caution and regard the situation as an emergency.

Because Plaintiff has provided no evidence that would indicate that the Health Services Plan amounts to a deliberately indifferent training policy, any claim of municipal liability for failure to train employees must fail.


### IV. Conclusion

Because no genuine issue of material fact exists, the court finds that summary judgment for Defendant is appropriate.

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment [Doc. # 31] is GRANTED.

IT IS FURTHER ORDERED that all other pending motions are DENIED as moot.


So **ORDERED** and **SIGNED** this **14** day of **September, 2007.**


_____

Ron Clark, United States District Judge